PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS G. VAN DYKE, *etc.*, *et al.*, | ) | |
| | ) | CASE NO.  4:09CV2823 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| SOVEREIGN INTERNATIONAL ASSET | ) | |
| MANAGEMENT, INC., *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF Nos. 38, 50, and 51] |

This action is before the Court upon Plaintiffs' Motion for Partial Summary Judgment (ECF No. 38).  The Court has reviewed the memorandum in support (ECF No. 39), memorandum in opposition (ECF No. 49), and reply memorandum (ECF No. 56).  This action is also before the Court upon Defendants' Motion to Strike Plaintiffs' Motion for Partial Summary Judgment (ECF No. 50).  The Court has reviewed the memorandum in support, memorandum in opposition (ECF No. 52), reply memorandum (ECF No. 54), and sur-reply memorandum (ECF No. 62-1).[1]  Plaintiffs' Motion for Partial Summary Judgment (ECF No. 38) and Defendants' Motion to Strike Plaintiffs' Motion for Partial Summary Judgment (ECF No. 50) are denied for the reasons set forth in Section III below.

Further, this action is before the Court upon Defendants' Motion for Summary Judgment (ECF No. 51).  The Court has reviewed the memorandum in support, memorandum in opposition

---

[1]  *See* Order (ECF No. 77) granting Defendants' Motion for Leave.

(4:09CV2823)

(ECF No. 58), and reply memorandum (ECF No. 68).  For the reasons set forth in Section IV

below, Defendants' Motion for Summary Judgment is granted in part and denied in part.

**I.**

Plaintiffs Thomas and Margaret Van Dyke, residents of Ohio, brought this action to

recover investment losses that occurred as a result of, among other things, their purchase of Class

A shares in Anchor Hedge Fund Limited ("Anchor A").  Sovereign and Mr. Grossman

recommended that Plaintiffs invest part of their portfolio in Anchor A.  On April 18, 2008,

Plaintiffs purchased shares of Anchor A for their joint account, as well as for their individual

IRA accounts.  Plaintiffs invested $617,773 from their joint account, $35,302 from Mrs. Van

Dyke's IRA, and $203,501 from Mr. Van Dyke's IRA.  Plaintiffs attested to their net worth being

above $1,000,000.00 at the time they purchased the shares of Anchor A securities, and they do

not dispute that they were "accredited investors"[2] at the time of their investment.

Sovereign is a registered investment advisory firm headquartered and incorporated in the

state of Florida.  Mr. Grossman served as Managing Director of Sovereign from its inception

until October 2008.  As an investment advisor, Sovereign and Mr. Grossman managed assets that

are owned by their clients but held in an account with a third party custodian.  Sovereign and Mr.

Grossman effectuated the transaction, provided Plaintiffs with the necessary paperwork, and

were paid a fee of 4.5% of the initial investment, or $38,546, for obtaining the investment, plus

---

[2]  An "accredited investor" is "[a]ny natural person whose individual net worth . . .
at the time of his purchase exceeds $1,000,000."  17 C.F.R. §230.501(a)(5).

2

(4:09CV2823)

additional compensation in the form of half of the 1% management fee and half of the 10% new net profit fee from Anchor.  *See* Grossman Tr. 146:3-12 (ECF No. 40 at 39).

The Investment Advisory Agreement (ECF No. 51-5), dated December 2, 2008, specifically requires that fees paid to Defendants be disclosed.  That agreement provides in pertinent part:

> . . . The Advisor may receive performance-based compensation from certain investment companies.  Advisor will notify clients in advance of any investments the nature of any and all fees charged to the client and/or paid to Advisor.

ECF No. 51-5 at 2, ¶ 10.

Anchor Hedge Fund Limited is the hedge fund in which Plaintiffs invested.  Plaintiffs purchased their shares of Anchor A securities from Anchor Hedge Fund Limited and the monies were invested with Bernard C. Madoff and Bernard C. Madoff Investment Securities, LLC.  Unfortunately, the Anchor A shares were subject to the fraud and criminal act of Madoff.  After the Madoff ponzi scheme was uncovered, in December 2008 Anchor Hedge Fund Limited notified investors of Class A that their investment had been affected by the fraud and criminal act of Madoff.  Plaintiffs' entire investment was lost.

Shares of Anchor A securities had not been registered under Chapter 1707 of the Revised Code and neither Sovereign nor Mr. Grossman are licensed to act as a securities dealer within the state of Ohio.  ECF No. 39-12 is a certificate from the Ohio Division of Securities ("the Division"), certifying that the records of that agency do not show that a filing for a claim of exemption, an application for registration, or a notice filing has been submitted to the Division for either Anchor Hedge Fund Limited, Anchor Hedge Fund Limited Class A Shares, or Anchor

(4:09CV2823)

Holdings, LLC.  ECF Nos. 39-13 and 39-14 are certificates from the Division certifying that the records of that agency reveal that neither Sovereign nor Mr. Grossman was licensed as an investment advisor, investment advisor representative or securities dealer within the state of Ohio at the time Plaintiffs purchased shares of Anchor A securities.

On December 4, 2009, Plaintiffs filed a Complaint (ECF No. 1) against Sovereign, Mr. Grossman and Gregory J. Adams that seeks damages for the losses they suffered related to the Anchor Fund, as well as damages for other trading losses that occurred in their account.  The Complaint (ECF No. 1) alleges claims under the antifraud provisions of Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act of 1940 ("Adviser's Act"), 15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(4) and Ohio Rev. Code §§ 1707.44(M)(1)(a), 1707.44(M)(1)(b) and 1707.44(M)(1)(d); the Declaratory Judgment Act, 28 U.S.C. § 2201; and common law claims for breach of fiduciary duty (Third Claim), negligence (Fourth Claim), breach of contract (Sixth Claim), and failure to supervise/*respondeat superior* (Seventh Claim).

**II.**

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v.*

4

(4:09CV2823)

*Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has

failed to establish an essential element of his case upon which he would bear the ultimate burden

of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

 Once the movant makes a properly supported motion, the burden shifts to the non-moving

party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely

on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be

resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The

non-moving party must, to defeat the motion, "show that there is doubt as to the material facts

and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980

F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in

the light most favorable to the non-moving party when deciding whether a genuine issue of

material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88

(1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

 The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242 (1986), stated that in order for a motion for summary judgment to be granted, there must be

no genuine issue of material fact. *Id.* at 248. A fact is "material" only if its resolution will affect

the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must

decide whether the evidence is such that reasonable jurors could find that the non-moving party

is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand summary

judgment, the non-movant must show sufficient evidence to create a genuine issue of material

(4:09CV2823)

fact.  *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).  The existence of a mere

scintilla of evidence in support of the non-moving party's position ordinarily will not be

sufficient to defeat a motion for summary judgment.  *Id.*

### III.

Plaintiffs move the Court for partial summary judgment on a portion of their claim under

the Ohio Securities Act, Ohio Rev. Code § 1707.01 *et seq.*, as to Sovereign and Mr. Grossman

only.  *See* ECF No. 38 at 1.  Plaintiffs request that the Court find that the shares of Anchor A

purchased by them were not registered or exempt from registration as required by Ohio Rev.

Code §1707.44(C), that the transactions in which Plaintiffs purchased the shares were not

registered or exempt from registration, that Sovereign and Mr. Grossman participated or aided in

the sale of those securities to Plaintiffs as defined in Ohio Rev. Code §1707.43, and that

Plaintiffs are entitled to rescission of the purchase and a return of all monies paid in connection

therewith.  ECF No. 39 at 10-11.

Defendants contend in their Motion to Strike Plaintiffs' Motion for Partial Summary

Judgment (ECF No. 50) that Plaintiffs argue for summary judgment on claims not asserted in the

Complaint (ECF No. 1).  They request that the Court not address claims raised for the first time

in Plaintiffs' dispositive motion and strike Plaintiffs' motion.  *See e.g.*, *Kaplan v. Experian

Information Solutions, Inc.*, No. 09-10047, 2009 WL 5166201, at *4 (E.D.Mich. Dec. 17, 2009)

(striking plaintiff's motions seeking summary judgment on newly asserted claims).  Plaintiffs

filed the within Motion for Partial Summary Judgment addressing new claims prior to seeking

6

(4:09CV2823)

leave to file an amended complaint.  The Court, however, will address the newly asserted claims

in the interests of justice.

Plaintiffs argue that Sovereign and Mr. Grossman, while acting as Plaintiffs' investment

advisors, effectuated the sale to Plaintiffs of a security that was neither registered nor exempt

from registration as required by Ohio Rev. Code § 1707.44(C), in a transaction that was neither

registered nor exempt.  In addition, by accepting a commission on the transaction, these

defendants acted as "brokers" as defined in Chapter 1707 of the Revised Code, yet failed to

obtain a license to act as such with the Division.  As a result, Plaintiffs assert they are entitled to

void the contract for sale and seek recessionary remedies under Ohio Rev. Code §1707.43(A).

Ohio Rev. Code §1707.43 provides that a contract for sale of securities is voidable at the

option of the purchaser if those securities are sold in violation of Chapter 1707 of the Revised

Code.  Section 1707.43(A)  imposes liability upon anyone who "has participated in or aided the

seller in any way" in selling securities in violation of Chapter 1707.  Plaintiffs argue that the

evidence demonstrates that Sovereign and Mr. Grossman violated Chapter 1707 in two ways.

First, they violated Ohio Rev. Code §1707.44(C)(1) by selling unregistered securities to

Plaintiffs.  Second, once Sovereign and Mr. Grossman accepted a percentage of the purchase

price of the Anchor A shares as compensation, they violated Ohio Rev. Code §1707.14 by acting

as a dealer in securities without appropriate licensure.  Additionally, Plaintiffs contend that these

defendants are liable to them under Section 1707.43(A) for aiding and abetting the sale of the

unregistered Anchor A securities.

(4:09CV2823)

The Court need not address the merits of Plaintiffs' argument that Sovereign and Mr. Grossman violated Ohio Rev. Code §1707.44(C)(1) by selling unregistered securities to Plaintiffs because Plaintiffs withdrew their claims under Ohio Rev. Code §§ 1707.44(A) and (C) in their memorandum in opposition to Defendants' Motion for Summary Judgment.  *See* ECF No. 58 at 17 n. 4.

Defendants argue that Plaintiffs cannot establish that Sovereign and Mr. Grossman violated Ohio Rev. Code § 1707.14 by acting as a dealer in securities without appropriate licensure because Sovereign and Mr. Grossman at all times acted as investment advisors, not dealers, and neither Sovereign nor Mr. Grossman engaged in the "purchase or sale" of any security.  The Court agrees.

**IV**.

**A.  Claims under § 206(1) of the Advisers Act and Ohio Rev. Code § 1707.44(M)(1)(a)**

Section 206(1), 15 U.S.C. § 80b-6(1), states that "[i]t shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly--(1) to employ any device, scheme, or artifice to defraud any client or prospective client."  Section 206(1) contains language almost identical to Rule 10b-5(a), 17 C.F.R. § 240.10b–5.

For Plaintiffs to establish liability under Section 206(1), they must prove:  1) that Defendants made a misrepresentation or omission; 2) that was material; 3) that was made with scienter; 4) that Plaintiffs relied upon the misrepresentation or omission; 5) that Plaintiffs sustained economic loss; and 6) that Plaintiffs can establish loss causation.  *Stoneridge Inv.*

8

(4:09CV2823)

*Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008) (citing *Dura*

*Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-342 (2005)).  Defendants argue that

Plaintiffs have failed to establish these elements.

The language of Ohio Rev. Code § 1707.44(M)(1)(a) is similar to that of § 206(1).

*1.  Whether Defendants omitted to inform Plaintiffs of information that should have been disclosed*

Plaintiffs claim that Defendants failed to disclose in advance of Plaintiffs' commitment to

purchase shares in Anchor that the entire 4.5% "cost of entry" fee paid to Anchor at the time of

purchase would thereafter be paid directly back to Defendants.  Defendants assert that the

Investment Advisory Agreement (ECF No. 51-5), the Form ADV (ECF No. 51-7), and the

Private Placement Memorandum (ECF No. 51-6), dated June 30, 2005, spell out the means by

which Defendants were compensated.  According to Plaintiffs, these documents do not spell out

the fee arrangement between Defendants and Anchor.  Defendants argue that Mr. Grossman

provided Plaintiffs with the Private Placement Memorandum (ECF No. 51-6).  *See* ECF No. 51

at 6.  On the contrary, Plaintiffs testified that they never received the Private Placement

Memorandum (ECF No. 51-6):

> Q.     You got all the documents associated with that purchase, correct?
> A.     No.
> Q.     You didn't get a private placement memorandum?
> A.     No.

M. Van Dyke Tr. 96:15-20 (ECF No. 41 at 25).  But, Plaintiffs acknowledged that they

requested, received and read the Private Placement Memorandum (ECF No. 51-6) when they

executed the Application for Class A Shares.  *See* ECF No. 51-8 at 2, No. 1 ("I/We have

9

(4:09CV2823)

requested, received and have read the Private Placement Memorandum dated 30 June 2005 of the

Anchor Hedge Fund Limited, Class A Shares.")

> Defendants contend that

> Plaintiffs cannot (successfully) argue that they were unaware of Mr. Grossman's association with Anchor or that he was compensated by Anchor for the investment advisory services he provided to Anchor, when they expressly acknowledged receiving and reading the Anchor Private Placement Memorandum, which contains this very information.

ECF No. 68 at 7.  Courts, however, cannot weigh evidence at the summary-judgment stage.

*Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001).  Defendant's reply memorandum (ECF

No. 68) invites the Court to tread dangerously close to, and likely cross over, the line of

impermissible evidence weighing at this stage of the litigation.

Plaintiffs claim that Defendants failed to disclose Mr. Grossman's association with

Anchor.  Defendants received additional compensation in the form of half of the 1% management

fee on Anchor A and half of the 10% new net profit fees on Anchor.  According to Plaintiffs, Mr.

Grossman never revealed that he was a member of Anchor's Investment Advisory Board.  While

this is noted in the Private Placement Memorandum (ECF No. 51-6), as previously stated Mrs.

Van Dyke testified that they never received that document.  *See* M. Van Dyke Tr. 96:18-20 (ECF

No. 41 at 25).

Plaintiffs also claim that Defendants failed to disclose that the sale of Sovereign was

being negotiated by Messrs. Grossman and Adams at the time Plaintiffs opened their account.

Defendants claim that there is no evidence that Mr. Grossman was negotiating the sale of

Sovereign at the time Plaintiffs opened their account in March or April of 2008.  *See* ECF No. 51

10

(4:09CV2823)

at 9.  Mr. Grossman, however, did in fact testify that he began negotiations with Mr. Adams in

February, 2008.

> Q.      . . . Do you know how long you and Mr. Adams had been discussing him
> joining the firm?
> A.      I believe February.
> Q.      Beginning of February of '08?
> A.      I believe that's the date.
> Q.      Okay.  And was it your intent to try to sell the business to him at that point
> in time, at the culmination of the discussions about the sale?
> A.      That's what they were about.

Grossman Tr. 195:11-19 (ECF No. 40 at 51).

> *2.  Whether the omitted information is material*

"Information is material if it would 'be considered significant to the trading decision of a

reasonable investor.'"  *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1410 (6th Cir.

1991) (quoting *Basic, Inc. v. Levinson*, 485 U.S. 224, 236 (1988)).  An omission or

misrepresentation is material if there is a substantial likelihood that a reasonable investor would

have viewed the omitted or misrepresented fact as having significantly altered the total mix of

information available.  *Basic*, 485 U.S. at 232.

Defendants challenge the materiality of the omitted information on two grounds.  First,

with respect to the failure of Defendants to inform Plaintiffs of the sale negotiations, Defendants

simply state that the information was not material.  *See* ECF No. 51 at 11.  Defendants' burden

on summary judgment, however, requires more than just a conclusory statement.

Second, Defendants' position with respect to the materiality of their failure to disclose

that the "cost of entry" fee was paid back to them is simply that the failure to disclose could not

have been material because Plaintiffs were aware that they had to pay the fee, and apparently it

11

(4:09CV2823)

should not matter where the funds went or to whom they were disbursed.  *See* ECF No. 51 at 11.

According to Plaintiffs, Mr. Grossman knew how material those omissions were as he went to

great efforts to inform Plaintiffs as to how inappropriate it was for their prior advisor to make

recommendations to them without disclosing fees paid up front to the advisor for his services.

Grossman Tr. 64-65 (ECF No. 40 at 18); *see also* ECF No. 57-7 at 2 ("Marje there are a lot of

investments I was really surprised to see.  Front end load mutual funds which are great for the

broker and pay a really nice commission but guarantee you are immediately behind the eight

ball.").

     Plaintiffs, however, do not discuss how Defendants failure to disclose Mr. Grossman's

association with Anchor is material.  *See* ECF No. 57 at 10-13.

     *3.  Whether the omissions were intended to deceive*

     Defendants represent that Mrs. Van Dyke testified that Defendants did not act with

scienter.  ECF No. 51 at 12.  A review of the testimony cited by Defendants, however, reveals

that Mrs. Van Dyke emphatically believed that Mr. Grossman intentionally deceived her:

> Q.     You use the word "misrepresented," so I want to clarify what you mean by
> that.  You have no facts or evidence to suggest that they intentionally lied to you
> on certain issues; is that correct?
> A.     No.
> Q.     No meaning?
> A.     It's not correct.
> Q.     You think they intentionally lied to you?
> A.     Yes.
> Q.     Tell me how they intentionally lied to you.
> A.     We had no idea that Larry, until we found out from our attorney, that
> Larry, and I don't know about Greg, was receiving all this extra money from
> Anchor A, or was a part of the board, or was associated with them.  He never
> disclosed that to us in any way, and I think that's misrepresenting.

12

(4:09CV2823)

> Q.      You're talking about information he did not, you claim, represent to you at all, correct?
> A.      Correct.
> Q.      You're saying that was an omission of information that he did not provide to you?
> A.      A very important omission.
> Q.      I understand.  Is that your evidence of how he intentionally lied to you? Do you understand the difference between somebody intentionally lying to you and somebody misrepresenting to you negligently?  Do you understand that difference?
> A.      Yes, and I believe it was intentional.

M. Van Dyke Tr. 117:16-118:23 (ECF No. 41 at 30-31).

*4.  Plaintiffs' Reliance on the Omitted Matters is Presumed*

Defendants argue "Plaintiffs cannot establish that they justifiably relied on any alleged omission.  In fact, Plaintiffs did not ever plead, (Compl. at ¶41–51), and have not testified that they would not have invested with Mr. Grossman or Sovereign had they been told that the 4.5% fee was going directly to Mr. Grossman or Sovereign."  ECF No. 51 at 12.  But, Defendants did not ask Plaintiffs that question during their depositions.  Motions for summary judgment need factual support to sustain the burden necessary to show a lack of a genuine issue of fact.  *Celotex*, *477 U.S. at 324*.  Moreover, reliance is presumed where the omitted information is material. *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153–54 (1972).

*5.  Whether Defendants' Actions Were the Cause of Plaintiffs' Losses*

As discussed above, Plaintiffs' reliance on the omissions is presumed.  Thus, the "transactional causation" element is satisfied.  *Basic*, 485 U.S. at 243 ("Reliance provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury.").

13

(4:09CV2823)

With respect to loss causation, as discussed fully at § IV. C., *infra*, Defendants cannot escape liability for their actions by pointing a finger at Madoff. According to Plaintiffs, Defendants' actions were the cause of Plaintiffs' losses.

**B. Claims under §§ 206(2) and 206(4) of the Advisers Act and Ohio Rev. Code §§ 1707.44(M)(1)(b) and 1707.44(M)(1)(d)**

Section 206(2), 15 U.S.C. § 80b-6(2), states that "[i]t shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly--(2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client."

Section 206(4), 15 U.S.C. § 80b-6(4), states that "[i]t shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly--(4) to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative."

The language of Ohio Rev. Code § 1707.44(M)(1)(b) is similar to that of § 206(2). Moreover, the language of Ohio Rev. Code § 1707.44(M)(1)(d) is similar to that of § 206(4).

The elements of an offense under §§ 206(2) and 206(4) of the Advisers Act are identical to those under §206(1), with the exception that Plaintiffs are not required to demonstrate scienter. *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 195 (1963) (scienter is not required under § 206(2)). For the reasons discussed above, Defendants are not entitled to summary judgment on these claims.

14

(4:09CV2823)

**C.  Loss Causation -- Whether Defendants Actions Were the Cause of Plaintiffs' Losses in Anchor**

Defendants argue that Madoff's actions were a superseding cause of Plaintiffs' losses, thus preventing recovery on all of Plaintiffs' claims.  According to Defendants, their conduct was not the proximate cause of Plaintiffs' investment losses.  Instead, Madoff's fraudulent and criminal conduct caused Plaintiffs' injuries.  ECF No. 51 at 19.  In *Anwar v. Fairfield Greenwich, Ltd.*, 728 F.Supp.2d 372 (S.D.N.Y. 2010), however, the Court did not embrace the notion that an investment professional should find safe harbor from its own fraud and misrepresentation by pointing a finger at Madoff.  The Court was not persuaded by the Fraud Defendants' argument that Madoff's fraud was an intervening cause severing them from all liability.  *Id.* at 412-13.  Generally, where there are facts that could lead reasonable minds to different conclusions regarding whether an intervening act is a superseding cause of injury, the question is one for the trier of fact which may not be resolved by summary judgment.  *Leibreich v. A.J. Refrigeration, Inc.*, 67 Ohio St.3d 266, 269 (1993).

Defendants assert that they did not know that the hedge fund placed a portion of Plaintiffs' investment in a sub-fund controlled by Madoff.  *See* ECF No. 51 at 21.  Plaintiffs counter that "Mr. Grossman's claim that it was impossible for him to be aware of Madoff's alleged *involvement* in the fund is simply not credible," ECF No. 58 at 19 (emphasis in original), because Mr. Grossman served on Anchor's Investment Advisory Board, for which he was paid additional compensation in the form of half of the 1% management fee on Anchor A and half of the 10% new net profit fees on Anchor.  *See* Consulting Agreement (ECF No. 57-10); Grossman Tr. 142-147 (ECF No. 40 at 38-39).  "In reviewing a summary judgment motion, credibility

15

(4:09CV2823)

judgments and weighing of the evidence are prohibited.  Rather, the evidence should be viewed in the light most favorable to the non-moving party."  *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citing *Anderson*, 477 U.S. at 255).  The Court cannot say that no reasonable jury could believe that Defendants were unaware that the hedge fund placed a portion of Plaintiffs' investment in a sub-fund controlled by Madoff.  Accordingly, the Court finds that there is a genuine question of material fact as to whether Mr. Grossman was aware of Madoff's alleged involvement in the fund.

**D.  Whether the Economic-Loss Rule Prohibits Plaintiffs' Recovery**

Under Ohio law, "[t]he economic-loss rule generally prevents recovery in tort of damages for purely economic loss."  *Corporex Dev. & Const. Mgmt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 414 (2005).  The rule is based on the principle that "a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable."  *See Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 44 (1989) (internal quotations omitted).  Economic losses include failed investments.  *See McCutcheon v. Kidder, Peabody & Co.*, 938 F.Supp. 820, 823 (S.D.Fla. 1996) (applying the economic-loss rule to a securities case).

Ohio law prevents the recovery of purely economic losses in a negligence action where recovery of such damages is not based upon a tort duty independent of contractually created duties.  *See Corporex Dev. & Const. Mgmt., Inc.*, 106 Ohio St.3d at 413, 415; *Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Auth.*, 78 Ohio St.3d 353, 365-66 (1997).  In the case at bar, the Investment Advisory Agreement (ECF No. 51-5) created privity of

16

(4:09CV2823)

contract.  However, Plaintiffs have not identified any tort duty owed by Defendants independent of contractually created obligations.

Defendants argue that Plaintiffs' tort claims, including claims for Anchor and non-Anchor investments, are barred by the economic loss rule and the holding in *Brainard v. American Skandia Life Assur. Corp.*, 432 F.3d 655, 665 (6th Cir. 2005).  Defendants contend they should be granted summary judgment on all of Plaintiffs' common law tort claims because Plaintiffs are pursuing a claim for breach of contract against the same Defendants for the same alleged tortious acts.

While it is true that "the economic loss rule does not apply to bar claims for negligent misrepresentation" under Ohio law, *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1032 (6th Cir. 2003) , such a claim has not been made in the case at bar.  The term "misrepresentations" appears only once in the Complaint (ECF No. 1) at ¶ 10 regarding venue.

The Court holds that the economic-loss rule bars Plaintiffs' claim for negligence.  *See In re Nat'l Century Fin. Enters., Inv. Litg.*, 504 F. Supp.2d 287, 325 (S.D. Ohio 2007) ("[t]he economic loss rule prevents recovery in tort of damages for economic loss, and *it applies squarely to negligence claims*.") (emphasis added).

Furthermore, Mrs. Van Dyke testified:

> Q.      . . . Is that your evidence of how he intentionally lied to you?  Do you understand the difference between somebody intentionally lying to you and somebody misrepresenting to you negligently?  Do you understand that difference?
> A.      Yes, and I believe it was intentional.

17

(4:09CV2823)

M. Van Dyke Tr. 118:17-23 (ECF No. 41 at 31).  Accordingly, Plaintiff's Fourth Claim will be dismissed.

### E.  Breach of Fiduciary Duty Claim

Regarding Plaintiffs' common law claim for breach of fiduciary duty (Third Claim), there remain issues of fact as to the nature and extent of the due diligence Defendants performed both in general and with respect to the hedge fund placing a portion of Plaintiffs' investment in a sub-fund controlled by Madoff.  A trier of fact reasonably might conclude from the evidence before the Court that Defendants did not act with reasonable care in managing Plaintiffs' investments.  *Anwar*, 728 F.Supp.2d at 415 (S.D.N.Y. 2010) (refusing to dismiss breach of fiduciary duty claim because "[Defendants'] entrustment of Plaintiffs' investments to Madoff without having conducted due diligence or otherwise raising alarms about his operation in accordance with this duty constitutes a sufficient breach").

### F.  Breach of Contract Claim

Plaintiffs argue that their contracts with Defendants, including the Investment Advisory Agreement (ECF No. 51-5), contained an implied duty for Defendants to act in good faith and to deal fairly with them.  *Littlejohn v. Parrish*, 163 Ohio App.3d 456, 463 (Ohio App. 2005) (Ohio public policy dictates that every contract contain an implied duty for the parties to act in good faith and to deal fairly with each other); *Ward v. Cent. Invest., L.L.C.*, Nos. C-100080, C-100081, 2010 WL 5132776, at *4 (Ohio App. Dec. 15, 2010) ("every contract contains an implied duty

(4:09CV2823)

for parties to act in good faith and to deal fairly with each other") (internal quotations omitted).[3]

According to Plaintiffs, Defendants breached this implied duty by failing to disclose the inherent

conflict of interest in recommending the subject investments (*i.e.* failing to disclose that they

were receiving the 4.5% "cost of entry' fee).

**G.  Claims under Ohio Rev. Code §§1707.44(B)(5) and 1707.44(G)**

Plaintiffs have not addressed or rebutted Defendants' arguments under Ohio Rev. Code

§§1707.44(B)(5) and 1707.44(G).  *See* ECF No. 51 at 15-18.  Thus, the Court finds that Plaintiffs

have abandoned these claims and/or failed to offer any contrary legal or factual evidence, and

thus summary judgment will be entered in favor of Defendants on these claims.  *Pinto v.*

*Universidad De Puerto Rico*, 895 F.2d 18, 19 (1st Cir. 1990) ("the court is under no duty to

exercise imagination and conjure what a plaintiff might have alleged, but did not, and do

counsel's work for him or her"); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599

(11th Cir. 1995) ("[t]here is no burden upon the district court to distill every potential argument

that could be made based upon the materials before it on summary judgment").

V.

Plaintiffs' Motion for Partial Summary Judgment (ECF No. 38) is denied.

Defendants' Motion to Strike Plaintiffs' Motion for Partial Summary Judgment (ECF No.

50) is denied.

---

[3]  However, this duty of good faith does not authorize an independent cause of
action.  *Physicians Weight Loss Ctrs. v. Creighton*, No. 90CV2066, 1992 U.S. Dist.
LEXIS 12763, at *13 (N.D.Ohio March 30, 1992); *Ebie v. Teledyne Indus.*, No. 87-3852,
1988 WL 98366, at *4 (6th Cir. Sept. 21, 1988).

(4:09CV2823)

Defendants' Motion for Summary Judgment (ECF No. 51) is granted in part and denied in part.  Plaintiffs' Fourth Claim for negligence and the claim under Ohio Rev. Code §§1707.44(B)(5) and 1707.44(G). are dismissed.

IT IS SO ORDERED.

 September 30, 2011                          */s/ Benita Y. Pearson*       
Date                                      Benita Y. Pearson
                                           United States District Judge

20